# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>vs.<br><br>DOMINGO PACHECO-POO,<br><br>    Defendant. | No. 18-CR-109-CJW-MAR<br><br>**ORDER** |

## I. INTRODUCTION

This matter is before the Court on defendant's Second Motion to Dismiss (Doc. 33).[1] The government timely filed a resistance. (Doc. 46). For the following reasons, the Court **denies** the motion.

## II. RELEVANT BACKGROUND

Immigration and Customs Enforcement ("ICE") officers arrested defendant on October 2, 2018, when defendant appeared at an ICE office at the request of ICE officers handling immigration matters related to defendant's wife and children. Defendant was arrested on immigration charges because he was subject to an order of deportation.

On October 11, 2018, the government filed a criminal complaint against defendant, charging him with the crime of being found in the United States after Illegal Re-entry, in violation of 8 U.S.C. § 1326(a). (Case 18-mj-354, Doc. 2). The criminal warrant for his arrest was executed the same day and defendant was removed from ICE custody and placed in the custody of the United States Marshal. (*Id.*, Doc. 5). Apparently, at about the same time defendant came into the Marshal's custody, ICE filed

---

[1] Unless otherwise indicated, all references to the docket refer to the docket in Case No. 18-cr-00109-CJW-MAR.

a detainer against defendant.² Defendant made his initial appearance the same day before the Honorable Mark. A. Roberts, United States Magistrate Judge. (*Id.*, Doc. 8). Defendant waived a detention hearing at that time. (*Id.*).

On October 17, 2018, a grand jury returned an indictment charging defendant with being found in the United States after having been removed from the United States, in violation of 8 U.S.C. § 1326(a). (Doc. 2). Defendant waived initial appearance and arraignment and entered a written plea of not guilty. (Doc. 4).

On November 1, 2018, defendant filed a motion for pretrial release. (Doc. 10). On November 9, 2018, defendant appeared before Judge Roberts for a detention hearing. During the hearing, the government explained that if the court released defendant, ICE would immediately take him into custody pursuant to its detainer and begin the process of removing him from the United States. (Doc. 21; Tr. at 35). The government asserted that ICE could remove him from the United States within a few weeks, making him unavailable for trial. (*Id.*). Judge Roberts ordered defendant released on a personal recognizance bond, and he entered a written order to that effect. (Doc. 15). Judge Roberts stayed his order releasing defendant pending the government's filing of its motion appealing the order. (Doc. 14).

On November 9, 2018, the government appealed Judge Roberts' order. (Doc. 17). On November 14, 2018, the Court denied the government's appeal, finding under the factors of 18 U.S.C. § 3142 that the government had not proven that there was a serious risk that defendant would flee or pose a danger to others. (Doc. 20). The Court ordered defendant released from custody pursuant to the Order Setting Conditions of

---

² An immigration officer may issue a detainer with any other federal, state, or local law enforcement agency, requesting the agency contact ICE before releasing a defendant from their custody so that ICE officers can take the defendant into custody for purposes of removing the alien from the country. *See* 8 C.F.R. § 287.7(a).

Release entered by Judge Roberts.

Upon release from the custody of the United States Marshal, ICE immediately took defendant into custody pursuant to its detainer. On November 16, 2018, the government filed a motion to expedite the trial, arguing that ICE has begun proceedings to remove defendant. (Doc. 26, at 2). The government went on to say:

> ICE (part of the Department of Homeland Security) has indicated that it intends to proceed with the removal, and removal of defendant is likely to occur before the current trial date. Therefore, in light of the Court's order, there is a substantial risk of nonappearance of the defendant at trial.

(*Id.*, at 2 n.1).

### III. APPLICABLE LAW

The resolution of this motion turns on the interplay between two statutes, the Bail Reform Act of 1984 ("BRA"), 18 U.S.C. § 3142, et seq., and the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101, et seq. The BRA addresses a federal court's authority to detain a defendant for purposes of prosecution on federal charges. In pertinent part, the INA addresses the authority of the Department of Homeland Security ("DHS") to detain an alien for purposes of deportation. Defendant argues that a federal court's decision to release a defendant pursuant to the BRA bars the DHS from detaining that same person pursuant to the INA. The Court finds otherwise.

#### A. The BRA

The BRA applies to all persons charged with a federal crime, regardless of immigration status. In assessing whether a defendant should be released, 18 U.S.C. § 3142(a) establishes four options: (1) release on personal recognizance or upon execution of an unsecured appearance bond under § 3142(b); (2) release on one or more conditions outlined in § 3142(c); (3) temporary detention to permit revocation of conditional release, deportation, or exclusion under § 3142(d); or (4) detention pursuant to § 3142(e). The court may order detention of an arrestee pending trial only if the government

3

demonstrates after an adversarial hearing that no release conditions "will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1).

The only provision of the BRA that differentiates between the treatment of aliens and citizens—§ 3142(d)—permits a "temporary detention to permit . . . deportation, or exclusion" if the judicial officer determines that the defendant "is not a citizen of the United States or lawfully admitted for permanent residence" and "may flee or pose a danger to any other person or the community." *Id.* at § 3142(d)(1)(B), (d)(2). Specifically, in full, Section 3142(d) provides:

> (d) Temporary Detention To Permit Revocation of Conditional Release, Deportation, or Exclusion.—If the judicial officer determines that—
> (1) such person—
> (A) is, and was at the time the offense was committed, on—
> (i) release pending trial for a felony under Federal, State, or local law;
> (ii) release pending imposition or execution of sentence, appeal of sentence or conviction, or completion of sentence, for any offense under Federal, State, or local law; or
> (iii) probation or parole for any offense under Federal, State, or local law; or
> (B) is not a citizen of the United States or lawfully admitted for permanent residence, as defined in section 101(a)(20) of the Immigration and Nationality Act (8 U.S.C. 1101(a)(20) ); and
> (2) such person may flee or pose a danger to any other person or the community;
> such judicial officer shall order the detention of such person, for a period of not more than ten days, excluding Saturdays, Sundays, and holidays, and direct the attorney for the Government to notify the appropriate court, probation or parole official, or State or local law enforcement official, or the appropriate official of the Immigration and Naturalization Service. <u>If the official fails or declines to take such person into custody during that period, such person shall be treated in accordance with the other provisions of this section, notwithstanding the applicability of other provisions of law governing release pending trial or deportation or exclusion proceedings</u>. If temporary detention is sought under paragraph (1)(B) of this subsection,

such person has the burden of proving to the court such person's United States citizenship or lawful admission for permanent residence.

18 U.S.C. § 3142(d) (emphasis added).

### B. *The INA*

Relevant to this case, the INA provides:

If [DHS] finds that an alien has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal, the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed, the alien is not eligible and may not apply for any relief under this chapter, and the alien shall be removed under the prior order at any time after the reentry.

8 U.S.C. § 1231(a)(5). When an alien is subject to a removal order, the INA provides that the Executive Branch "shall remove the alien from the United States within a period of 90 days," or within the "removal period." *Id.* at § 1231(a)(1)(A). By statute, the removal period commences on the latest of:

(i) The date the order of removal becomes administratively final.
(ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
(iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

*Id.* at § 1231(a)(1)(B). The INA further directs that "during the removal period, [DHS] shall detain the alien." *Id.* at § 1231(a)(2). However, DHS "may not remove an alien who is sentenced to imprisonment until the alien is released from imprisonment." *Id.* at § 1231(a)(4)(A).

### C. *Cooperation and Conflict between ICE and the USAO*

When the government encounters an alien suspected of being both unlawfully in the United States and subject to removal, and the alien is also suspected of committing a federal offense, the executive branch agencies are necessarily placed in a position of having to work together to determine how to process the alien/criminal suspect. That

5

happened in this case. ICE initially arrested defendant without a warrant under the authority of 8 U.S.C. § 1357(a), which states:

> Any officer or employee of the Service authorized under regulations prescribed by [DHS] shall have power without warrant—
>
> * * *
>
> (2) to arrest . . . any alien in the United States, if he has reason to believe that the alien so arrested is in the United States in violation of any such law or regulation and is likely to escape before a warrant can be obtained for his arrest . . .
>
> * * *
>
> (4) to make arrests for felonies which have been committed and which are cognizable under any law of the United States regulating the admission, exclusion, expulsion, or removal of aliens if he has reason to believe that the person so arrested is guilty of such felony and if there is likelihood of the person escaping before a warrant can be obtained for his arrest …

8 U.S.C. § 1357(a)(2), (4). In any case in which ICE encounters an alien, ICE must decide whether to refer that alien for criminal prosecution, if applicable. ICE's Criminal Alien Program (CAP) Handbook,[3] in defining the "General Guidelines for ERO Prosecution Program," states:

> A supervisor or other designated third party within the agency should review all cases proposed for prosecution to verify the following:
> 1) Sufficient evidence exists to substantiate the offense being charged;
> 2) The elements of the offense being charged are satisfied;
> 3) Jurisdiction and venue questions have been correctly addressed;

---

[3] *See* U.S. ICE/ERO, 1 CRIMINAL ALIEN PROGRAM HANDBOOK, ERO 11157.1 (May 14, 2013), available at https://www.americanimmigrationcouncil.org/sites/default/files/foia_documents/access_to_counsel_ice_production_9-25-2014.pdf. I may take judicial notice of these administrative policies pursuant to Federal Rule of Evidence 201.

>                    and
>               4) The applicable and appropriate prosecutorial guidelines have been
>                  followed.
>     Determination to Pursue Criminal Prosecution or Administrative Remedies:
>     The resources of the federal judicial system are limited, and most violations
>     of the INA encountered by ERO enforcement officers will be handled
>     through removal proceedings.  All prosecution programs should have a
>     provision for a regular review of cases proposed for prosecutions.  These
>     reviews will assist ERO in determining whether administrative remedies
>     can satisfactorily resolve the cases, or whether the violations cause such a
>     serious impact on our society, innocent members of the public, and agency
>     operations that criminal prosecution should be pursued.

CAP Handbook at 40-41.

When an ICE officer refers an alien to a United States Attorney's Office ("USAO") for criminal prosecution, the USAO must decide whether to pursue criminal charges for unlawful re-entry. *See* SESSIONS MEMO at 2[4] ("Each District shall consider prosecution of 8 U.S.C. § 1326 for each illegal reentrant.  Priority, however, must be given to defendants who have been convicted of an aggravated felony, have any prior criminal history indicating the defendant poses a danger to public safety, have one or more administrative or criminal immigration violations, gang membership or affiliation, or where other aggravating circumstances are present.").

When a USAO pursues criminal charges against an alien in ICE custody, the USAO obtains a criminal arrest warrant and the alien is taken into custody by the United States Marshal, triggering the procedures of the BRA to determine whether the alien/defendant shall remain in custody under the federal charges pending trial.

---

[4] Jefferson B. Sessions, RENEWED COMMITMENT TO CRIMINAL IMMIGRATION ENFORCEMENT, MEMORANDUM (Apr. 11, 2017), available at https://www.justice.gov/opa/press-release/file/956841/download (hereinafter Sessions Memo). I may take judicial notice of these administrative policies pursuant to Federal Rule of Evidence 201.

Typically, ICE will lodge a detainer on the alien/defendant so that the alien/defendant will immediately return to ICE custody when released from custody on the federal charge.

When a court orders the alien's release under the BRA, a conflict sometimes then arises between ICE and a USAO. ICE will sometimes take the alien/defendant into its custody for purposes of deporting the alien/defendant, regardless of whether doing so would remove the alien/defendant from the United States and thereby prevent the USAO from completing its prosecution of the alien/defendant on the criminal charge. This is not a hypothetical danger. ICE has indeed deported alien/defendants in the past in this district despite the pendency of federal criminal charges. *See, e.g., United States v. Villatoro-Ventura*, No. CR 18-4060-LTS, at Doc. 69 (government notified the Court that ICE removed the defendant from the United States while the federal criminal case was pending).

The apparent inability of two agencies of the Executive Branch to work together in prioritizing their respective interest by choosing to proceed with either deportation or prosecution occasionally results in judicial intervention. Many courts, including this Court, have expressed puzzlement at and frustration with the Executive Branch as a result.[5] Some courts have concluded that they have the authority to force the government

---

[5] *See*, *e.g.*, *United States v. Villatoro-Ventura*, 330 F. Supp. 3d 1118, 1141 (N.D. Iowa 2018) (noting that the court was "perplexed by the Executive Branch's practice of seeking deportation while a defendant is awaiting trial on a federal criminal charge"); *United States v. Veloz-Alonso*, No. 1:18-cr-464, 2018 WL 4940692, at *3 (N.D. Ohio Oct. 12, 2018) (noting that the "conflict only exists because two executive agencies will not cooperate," finding it "perplexing that the executive branch squanders the time and resources it has invested in this issue"); *United States v. Marinez-Patino*, No. 11 CR 064, 2011 WL 902466, at *8 (N.D. Ill. March 14, 2011) (noting that if ICE deported an alien who was facing federal criminal charges, it "would create the harsh and absurd result of prematurely terminating the judicial proceedings against him, and thwarting the public's interest in prosecuting a criminal defendant," and stating "we think it safe to say Congress would expect two agencies from the same branch of government to work cooperatively and to refrain from acting irrationally").

to chose one path or other, as opposed to allowing the government to proceed on parallel tracks, even if in doing so one part of the Executive Branch frustrates the efforts of the other.  For the reasons explained below, I find that the Court does not have the authority, under the facts of this case, to force the Executive Branch to choose between prosecution and deportation, and that dismissal of the indictment is not warranted.

## IV.    ANALYSIS

In *Villatoro-Ventura*, in an opinion by the Honorable Leonard T. Strand, Chief United States District Court Judge, this Court addressed the very issue before me.  Based upon my own independent research and analysis, I find that Judge Strand properly rejected the line of district court decisions that held that the courts have the authority to force the Executive Branch to choose between criminal prosecution and administrative deportation actions, and to dismiss the criminal case if the Executive Branch does not so elect.  In a nutshell, these courts have concluded:

> [O]nce a criminal prosecution is initiated and the Government has invoked the jurisdiction of a federal district court, the Bail Reform Act is controlling.  When an Article III court has ordered a defendant released, the retention of a defendant in ICE custody contravenes a determination made pursuant to the Bail Reform Act.  As such, the Government's criminal prosecution cannot proceed and must be dismissed with prejudice . . . .

*United States v. Boutin*, 269 F. Supp. 3d 24, 26 (E.D.N.Y. 2017).  I will not repeat here Judge Strand's sound analysis, agreeing as I do with him that what Judge Strand referred to as the *Trujillo-Alverez* line of cases (beginning with *United States v. Trujillo–Alvarez*, 900 F. Supp. 2d 1167 (D. Or. 2012)) inadequately and incorrectly analyzed the legal issues.  I agree with Judge Strand that "no language in the INA . . . subordinates [the authority to detain and remove illegal aliens] to the BRA." *Villatoro-Ventura*, 330 F. Supp. 3d, at 1139.  I will, however, elaborate some on additional reasons I find for reaching the same conclusion.

9

First, I agree with other courts that "[i]t is not appropriate for an Article III judge to resolve Executive Branch turf battles." *United States v. Barrera-Omana*, 638 F. Supp. 2d 1108, 1111-12 (D. Minn. 2009). Where conflicts arise between the goals of two executive agencies "it is a matter for the Executive Branch to resolve internally." *United States v. Ailon-Ailon*, 875 F.3d 1334, 1339 (10th Cir. 2017). Further, I agree with Judge Strand that it is not "appropriate for the federal courts to step in and save the Executive Branch from its own, baffling decisions." *Villatoro-Ventura*, 330 F. Supp. 3d at 1141. A respect for the balance of power between branches of government underlies my reluctance to attempt to dictate to the Executive Branch how it conducts its business absent a showing of a constitutional violation.

Second, as in *Villatoro-Ventura*, in this case the magistrate judge did not rely on Section 3142(d) in detaining defendant. Therefore, I find that section has no direct applicability to this case. *See id.* at 1139-40.

Third, I agree with Judge Strand's finding in *Villatoro-Ventura* that Section 3142(d) cannot be read to reflect a Congressional intent to limit prosecution decisions by state and local governments, and that the operative language of that section directs the courts to treat an alien/defendant not detained by ICE under 3142(d) just like any other criminal defendant under the BRA. *Id.* at 1140-41. I would go further, however, and note that, in my view, the language of Section 3142(d) itself reflects an assumption that the government may proceed on parallel tracks in both criminal prosecuting an alien/defendant and proceeding against him for deportation at the same time. Under that section, if ICE choses to detain an alien/defendant within the ten-day period of temporary detention, then the ICE detention has the effect of removing from the court the need to determine whether to release the defendant in the criminal case pursuant to the other provisions under the BRA. That section does not go on to say that the criminal case must end if ICE pursues deportation.

Had Congress intended that the Executive Branch must elect between either criminal prosecution or deportation, Congress could have easily said so in this section by indicating that, if ICE proceeds to detain the alien/defendant for deportation, the court shall dismiss the criminal case, or by providing that, if ICE fails to detain the defendant within the ten-day period, it is barred from doing so at a later time. I find that the courts who have read into Section 3142(d) a requirement that the Executive Branch elect between criminal prosecution and administrative deportation read into that section language that simply does not exist. The Executive Branch can proceed against an alien/defendant on parallel administrative/criminal tracks. That the Executive Branch's own conduct may cause one of its trains to derail does not mean that the courts have the authority to force the Executive Branch to shut down one of its railroads to prevent it from occurring.

Fourth, I disagree with those courts that find that language in the Code of Federal Regulations, designed to control an alien's movement, limits ICE's ability to pursue deportation while criminal charges are pending. The Code of Federal Regulations provides that "No alien shall depart, or attempt to depart, from the United States if his departure would be prejudicial to the interests of the United States," and further defines as prejudicial the departure of an alien while a party to any criminal case pending in the United States. 8 C.F.R. §§ 215.2(a) & 215.3(g) (emphasis added). Several courts have read this language as indicating that ICE cannot deport an alien while criminal charges are pending. *See*, *e.g.*, *United States v. Laurean-Lozoya*, No. CR-18-0700-TUC-RM, 2018 WL 5928169, at * 3-4 (D. Ariz. Oct. 23, 2018); *United States v. Resendiz-Guevara*, 145 F. Supp. 3d 1128, 1136 (M.D. Fla. 2015). Although this language may reflect a policy preference for the completion of criminal proceedings before deportation occurs, it does not bar ICE from pursuing deportation against a criminal defendant. The language of the regulation is directed at the conduct of aliens, barring them from leaving,

not directed at ICE, barring it from deporting aliens. Further, even if this regulation reflects a preference that the Executive Branch prioritize criminal prosecution over deportation, it cannot be stretched to impose an obligation that the Executive Branch cease deportation proceedings when it is also seeking criminal prosecution.

Finally, I believe the *Trujillo-Alverez* line of cases properly focuses on the purpose of the detention of a defendant by ICE when that defendant has been released by a court under the BRA, but then fail to properly address whether the facts show an improper purpose. The key language in the *Trujillo-Alverez* line of cases is that "to disregard the congressionally-mandated provisions of the BRA by keeping a person in [ICE] detention for the purpose of delivering him for trial" violates the BRA. *Trujillo-Alverez*, 900 F. Supp. 2d at 1178 (emphasis added) ("What neither ICE nor any other part of the Executive Branch may do, however, is hold someone in detention for the purpose of securing his appearance at a criminal trial without satisfying the requirements of the BRA."). For the most part, however, these cases cite no facts that would demonstrate that ICE detained the alien/defendant for that purpose, as opposed to its legitimate and statutorily mandated authority to detain the alien/defendant for the purpose of deportation. For example, in *United States v. Ventura*, 17-CR-418, 2017 WL 5129012, at * 3 (E.D. N.Y. Nov. 3, 2017), the prosecutor speculated that ICE may have detained the alien/defendant because that agency disagreed with the court's release of the person under the BRA. The court properly noted that, if true, "[t]his affront to the mandates of the Bail Reform Act and the legislative intent reflected therein, designed to protect the constitutional rights of liberty and due process accorded to all individuals charged with criminal offenses, is particularly troubling." *Id.* Without any factual finding that this was the purpose of the ICE detention, however, the court then found that the government must elect between prosecution or deportation. The Second Circuit Court of Appeals remanded the case with instructions to the district court to "explicate its rationale" and

clarify whether the district court was making a finding of pretext. 2018 WL 4224333.

Although the Executive Branch perhaps "should decide where its priorities lie: either with a prosecution in federal district court or with removal of a deportable alien," *Ventura*, 2017 WL 5129012, at * 3, I do not believe the courts have the authority to compel the Executive Branch to make that election absent evidence that it is abusing its authority for the purpose of circumventing a court's order of release under the BRA. I agree with Judge Strand that "relief may be warranted in a particular case if it becomes clear that the Executive Branch is using ICE solely to hold a defendant for his or her federal criminal trial after the court has ordered release under the BRA." *Villatoro-Vendtura*, 330 F. Supp. 3d at 1141. But just as in *Villatoro-Vendtura*, there is no evidence in this case that the Executive Branch used ICE's authority to detain defendant under the INA as a way to circumvent this Court's order of release on the criminal charges under the BRA. To the contrary, the government represents that ICE is actively pursing defendant's deportation. Moreover, I have already noted that, however absurd it may be, in *Villatoro-Vendtura* ICE deported the defendant while he was pending criminal prosecution in this Court.

Finally, defendant makes abbreviated arguments that the government has violated, and likely intends to continue to violate, his rights under the Fifth and Eighth Amendments. (Doc. 33-1, at 6). Defendant claims that his detention by ICE is a violation of his due process rights under the Fifth Amendment and constitutes excessive bail under the Eighth Amendment. Although it is possible to imagine scenarios in which the Executive Branch could interfere with a defendant's due process rights by proceeding under the INA (for example, by interfering with a defendant's ability to consult with his attorney), that has not occurred in this case. There is no evidence in this case that defendant's detention in ICE custody has adversely impacted his ability to confer with his attorney or to assist in his defense of this case. Defendant simply asserts that the

13

Executive Branch has not complied with its own regulations and has violated this Court's order releasing defendant under the BRA. Having rejected those arguments above, I find this argument also fails. Defendant's Eighth Amendment argument is based on the premise that the Executive Branch has violated the BRA and, by extension, has violated that Eighth Amendment's prohibition of excessive bail. Because I have found no BRA violation, this argument necessarily fails.

## V.　　CONCLUSION

I conclude that the Executive Branch may proceed against defendant on the parallel tracks of criminal prosecution and administrative deportation, and that in doing so ICE may detain defendant for the purpose of processing him for deportation even though this Court has ordered his release for purposes of his criminal prosecution. Although the Executive Branch should coordinate its efforts so that one part of that branch does not frustrate the efforts of another part of the same branch, it is not for the courts to do it for the Executive Branch. I conclude that this Court cannot compel the Executive Branch to chose between the two paths, and that the Court should not dismiss the criminal case if the Executive Branch fails to surrender its authority to process defendant for deportation. Accordingly, the Court denies defendant's Second Motion to Dismiss (Doc. 33).

**IT IS SO ORDERED** this 3rd day of December, 2018.

_____
C.J. Williams
United States District Judge
Northern District of Iowa