# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> vs. <br><br> DOMINGO PACHECO-POO, <br><br> Defendant. | No. 18-cr-109-CJW-MAR <br><br> **ORDER** |

## I.  INTRODUCTION

This matter is before the Court on defendant's First Motion to Dismiss (Doc. 25).[1] The government timely filed a resistance. (Doc. 29). On Monday, December 10, 2018, the Court held an evidentiary hearing on the motion. United States Border Patrol Agents Khristina Ondrejcak and Steve Mahoney testified on behalf of the United States. In addition, the Court accepted into evidence government exhibits 1 through 12. Defendant testified on his own behalf and the Court accepted into evidence defense exhibits A through F. At the conclusion of the hearing, the Court announced its ruling **denying** defendant's First Motion to Dismiss. This Opinion further explains the basis for the Court's ruling.

## II.  RELEVANT BACKGROUND

Immigration and Customs Enforcement ("ICE") officers arrested defendant on October 2, 2018, when defendant appeared at an ICE office at the request of ICE officers handling immigration matters related to defendant's wife and children. Defendant was arrested on immigration charges because he was subject to an order of deportation.

---

[1] Unless otherwise indicated, all references to the docket refer to the docket in Case No. 18-cr-00109-CJW-MAR.

On October 11, 2018, the government filed a criminal complaint against defendant, charging him with the crime of being found in the United States after Illegal Re-entry, in violation of 8 U.S.C. § 1326(a). (Case 18-mj-354, Doc. 2). On October 17, 2018, a grand jury returned an indictment charging defendant with being found in the United States after having been removed from the United States, in violation of 8 U.S.C. § 1326(a). (Doc. 2). The defendant was removed from the United States twice, once in July 2012, and again in August 2012.

On June 29, 2012, United States Border Patrol Officers encountered defendant in Arizona after he illegally crossed into the United States. (Exhibits 1 & 2). The Border Patrol Agent who initially encountered defendant advised him of his rights in Spanish and defendant signed a form using the initials "DP," requesting to be returned to his own country. (Exhibit 1). The form is written in Spanish. The Court accepts that testimony as credible. The form indicates "Notice read by subject." (*Id.*). Defendant speaks Spanish, but also speaks an indigenous language as well. Defendant testified that he has had no formal schooling and is illiterate.

Immigration and Custom Enforcement (ICE) officers transported defendant to Tucson, Arizona, for deportation processing. There, Agent Khristina Ondrejcak interviewed defendant again in Spanish.[2] (Exhibits 2 & 3). Defendant stated that he came to the United States to find work. (Exhibit 3, at 3). Agent Ondrejcak understood from defendant's statements that he was illiterate, so she read to defendant verbatim the documents advising defendant of his rights. This included a paragraph that stated:

> U.S. Law provides protection to certain person who face persecution, harm or torture upon return to their home country. If you fear or have a concern about being removed form the United States or about being sent home, you

---

[2] Agent Ondrejcak learned Spanish at the ICE Academy over the course of four months' study, and then used Spanish in speaking with native speakers daily as part of her job for approximately three years prior to her interaction with defendant.

should tell me so during this interview because you many not have another chance. You will have the opportunity to speak privately and confidentially to another officer about your fear or concern. That officer will determine if you should remain in the United States and not be removed because of that fear.

(Exhibit 3, at 1).[3] Agent Ondrejcak then asked defendant a series of questions and typed defendant's responses. (Exhibit 3, at 1-3). Defendant repeatedly stated that he did not have any fear or concern about being returned to his home country. (*Id.*, at 2-3). Defendant initialed each page with an "X," based on his assertion that he was illiterate.[4]

Defendant testified that he remembered being arrested near the United States border along with another fifteen to twenty people. He recalled agents asking him his name and where he was from, and that the agents told him that he could not come to the United States. Defendant testified that he did not recall any interview by any female officer. Defendant testified generally that he did not remember filling out any paperwork. Defendant testified that he did recall telling officers he came to the United States seeking work. Defendant testified that no officer ever asked him if he had been

---

[3] To be clear, Agent Ondrejcak was forthright in testifying that she had no independent recollection of this particular defendant. The Court would be surprised if she did, given the number of people the agent encountered on a daily basis as part of her job. Agent Ondrejcak testified, however, that she always reads the documents verbatim to aliens, particularly when they claim to be illiterate. Nothing in the cross examination of the agent detracted from her credibility on this point. Although the agent testified by telephone (with consent of defendant) and the Court therefore could not observe the agent's demeanor, based on the agent's tone of voice, lack of hesitancy in answering questions, and the lack of anything else suggesting otherwise, the Court found the agent's testimony credible.

[4] The Court notes that defendant apparently used the initials DP when signing the Form 1-213 (Exhibit 1), which is inconsistent with his later use of an "X" and the claim that he is completely illiterate. Defendant testified at the hearing and never denied making those initials. Although a minor point, given the Court's acceptance that defendant is otherwise illiterate, the Court did consider this in assessing the credibility and reliability of defendant's other testimony.

harmed in his native country. Defendant testified that he had, however, been harmed by his brother who was trying to kill him, and that defendant had a scar on his neck from an assault by his brother. Defendant testified that he was afraid to return to Guatemala because people there do not like him because they discriminate against natives like him. On cross examination, however, defendant provided inconsistent testimony, at one point testifying that he remembered telling the agent he was not afraid to return to his home country, but later testifying that he did not recall telling the agents anything. Although the Court found defendant generally credible, the Court found his testimony unreliable because he did not recall ever talking with a female agent, when the documents clearly show he did, and defendant presented inconsistent testimony regarding what he said or did not say to the officers.

On July 1, 2012, Agent Ondrejcak completed a Determination of Inadmissibility and ordered defendant's removal from the United States. (Exhibit 4). Agent Ondrejcak's supervisor, Steve Mahoney, reviewed the paperwork regarding defendant, including his denial of any fear of being returned to his home country, and approved defendant's removal. (*Id.*). On July 13, 2012, defendant was removed to his home country of Guatemala. (Exhibit 5).

On August 21, 2012, Border Patrol Agents encountered defendant again crossing into the United States illegally. (Exhibit 6). Defendant again requested to be returned to his native country. (*Id.*). Immigration officers again processed defendant in a similar manner, again advising him of his right to seek asylum if he feared return to Guatemala. (Exhibits 7 & 8). Defendant again denied any fear of being returned to his home country. (*Id.*). Defendant was again removed from the United States. (Exhibit 9). Agent Ondrejcak was not involved in the contact with defendant in August 2012, but testified that the procedures she followed in her contact with defendant in July 2012, would have been followed by other officers encountering defendant in August 2012

4

because that occurred in the Tucson office which is the headquarters office for her division.

The indictment in this case alleges defendant was found in the United States after having been removed from the United States both in July 2012 and August 2012, in violation of Title 8, United States Code, Section 1326(a).

### III. APPLICABLE LAW

A defendant may collaterally attack an underlying order of removal that forms the basis of a charge for being found in the United States after having been removed from the United States. 18 U.S.C. § 1326(d). A defendant making such a collateral attack bears the burden of proving both that there was a procedural defect in the prior removal and that defendant was prejudiced by that defect. *United States v. Martinez-Amaya*, 67 F.3d 678, 681 (8th Cir. 1995). To meet this burden, a defendant must show that "an error in the deportation proceedings rendered the proceedings fundamentally unfair" and that 'the error functionally deprived the alien of the right to judicial review." *United States v. Rodriguez*, 420 F.3d 831, 833-34 (8th Cir. 2005).

Defendant asserts that the agent's failure to advise him of his right to seek asylum based on a fear of returning to his home country constitutes an error rendering the proceeding fundamentally unfair. This may be the case. *See Haitian Refugee Ctr. v. Smith*, 676 F.2d 1023, 1038 (5th Cir. Unit B 1982) ("[W]e conclude that Congress and the executive have created, at a minimum, a constitutionally protected right to petition our government for political asylum."). The Eighth Circuit Court of Appeals, however, has been more skeptical. *See Minwalla v. INS*, 706 F.2d 831, 834 (8th Cir. 1983) ("Assuming that due process entitles an alien to notice of his right to apply for asylum, we do not find in these circumstances that due process has been violated."). More recently, the Eighth Circuit has said that such notice is not required where the alien has no "apparently eligibility" for asylum or other similar relief. *Rivas-Quilizapa v. Lynch*,

5

653 F. App'x 487, 490 (8th Cir. 2016) ("Because none of the statements [petitioner] made during his removal proceedings indicated an 'apparent eligibility' for asylum, withholding of removal, or relief under the Convention Against Torture, we conclude that the [immigration judge] was under no duty to inform him of those forms of relief and thus committed no fundamental procedural error in not doing so.").

## IV. ANALYSIS

In this case, the Court finds defendant did not carry his burden. The evidence presented to the Court was that, in July 2012, the agent fully informed defendant in Spanish of his right to seek asylum if he feared return to his home country, and defendant repeatedly denied having such a fear. Defendant's testimony did not detract from the reliability of the agent's testimony because defendant could not even recall speaking with a female agent. Even if the Court were to accept defendant's assertion that a failure to inform defendant of his right to seek asylum would render his removal fundamentally unfair, there is simply no factual basis in the record for the Court to conclude that the agent did not do so. Moreover, a "presumption of regularity supports the official acts of public officers, and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties." *United States v. Chem. Found., Inc.*, 272 U.S. 1, 14-15 (1926). *See also U.S. Postal Serv. v. Gregory*, 534 U.S. 1, 10 (2001) (noting that "a presumption of regularity attaches to the actions of Government agencies"); *Wilburn v. Astrue*, 626 F.3d 999, 1003-04 (8th Cir. 2010) (noting the presumption of regularity afforded public officers in the discharge of their duties). The Court gave defendant the opportunity to present clear evidence to rebut the presumption of regularity and he failed to do so. The Court finds nothing fundamentally unfair about the proceedings.

Defendant argues that his removal was unfair because the agents had a duty to inquire further into defendant's statement that he came to the United States for work.

6

The Court rejects that argument. Defendant argues that it was possible that defendant was seeking work in the United States because he was part of a native group subjected to violence by others in Guatemala. (Exhibit E). Defendant provided no evidence, however, that he made any statements that would have implied such a connection during his interaction with Agent Ondrejcak. There is nothing in the record, therefore, that would have suggested that the agent had a duty to inquire further on this topic. Moreover, defendant proffered no evidence actually showing that he was subjected to violence in Guatemala and that he sought work in the United States for that reason.

## V.   CONCLUSION

Accordingly, for the reasons set forth above and for the reasons stated on the record at the conclusion of the hearing on December 10, 2018, the Court denies defendant's First Motion to Dismiss (Doc. 25).

**IT IS SO ORDERED** this 14th day of December, 2018.

_____
C.J. Williams
United States District Judge
Northern District of Iowa